RICHING CORPORATION *et al.*, Plaintiffs-Appellees, *v.* RICHARD J. DALEY, Mayor and Local Liquor Control Commissioner of the City of Chicago, *et al.*, Defendants-Appellants.

First District (5th Division)    No. 62349

Opinion filed October 22, 1976.—Rehearing denied November 23, 1976.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Richard F. Friedman, Assistant Corporation Counsel, and Mary Denise Cahill, law student, of counsel), for appellants.

Burke & Burke, Ltd., and Benjamin Daidone, both of Chicago (John M. Burke, of counsel), for appellees.

Mr. JUSTICE BARRETT delivered the opinion of the court:

This is an appeal by defendants, Richard J. Daley, Mayor of the City of Chicago, who is the Local Liquor Control Commissioner for said city and its License Appeal Commission from a judgment of the circuit court of Cook County entered in an administrative review proceeding (Ill. Rev. Stat. 1975, ch. 110, pars. 267, 274). The circuit court reversed the determination of the License Appeal Commission which had affirmed the order of the Local Liquor Control Commissioner revoking the liquor license issued to the Quiet Knight. The plaintiffs in the administrative review proceedings were the licensees, Richard F. Harding and Riching Corporation. The issue presented on appeal is whether the administrative findings were against the manifest weight of the evidence.

On April 16, 1974, following a hearing, Richard J. Daley, as Local Liquor Control Commissioner, revoked the city retail liquor license issued to plaintiffs, for the premises located at 953 West Belmont Avenue in Chicago, and known as the Quiet Knight. The revocation order stated:

"1. That the licensee corporation is not operating the licensed premises as a 'restaurant' within the meaning described in Chap. 43, §2.23, Ill. Rev. Stat. 1971, and therefore, does not qualify to hold a retail liquor license in the State of Illinois, contrary to Chap. 43, §142, Ill. Rev. Stat. 1971, Ordinances of the City of Chicago and Rules of the Illinois Liquor Control Commission.

2. That the licensee corporation is operating the licensed premises without a clear view into the interior of such licensed premises from the street, contrary to Chap. 43, §141, Ill. Rev. Stat. 1971, Ordinances of the City of Chicago and Rules of the Illinois Liquor Control Commission."

The License Appeal Commission of the City of Chicago confirmed this

decision. Plaintiffs then filed this action in the circuit court for administrative review. The circuit court reversed this order finding that it was contrary to the manifest weight of the evidence.

Chicago Police Officer John Spellman testified that he visited the Quiet Knight on February 6, 1974. The premises occupy the entire second floor. On the west end was a nightclub with small tables; on the north end was a bar; and on the south end was a kitchen. Near the kitchen was another room where there was a pool table and where they were building another bar. When asked if he was serving food, Richard Harding said the kitchen was in the process of being remodeled and that he served only "poor boy" sandwiches to his customers. The officer then issued a summons for a "clear view" violation (Ill. Rev. Stat. 1973, ch. 43, par. 141), which pertains to the requirement that business establishments serving liquor have an unobstructed view of their interior from the street. Restaurants and other specified enterprises not relevant to this case are excluded from this statutory requirement.[1]

Chicago police officer John Rouzan testified he visited the premises on February 14, 1974. On the second floor was a room in which a band was playing and 11 customers were sitting at tables and chairs. Beer bottles and glasses containing some liquid were on the tables. An unidentified woman, who worked as a waitress, told him food had not been served for about three weeks. Richard Harding told him they were remodeling and moving the kitchen and that food would be served at a later date. The officer then issued a citation for a "clear view violation."

Richard Harding was called as an adverse witness under section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1973, ch. 110, par. 60.) He testified that he was the president and treasurer of the plaintiff corporation. He had served food since he opened the establishment over four years earlier. However, about January 17, 1974, the refrigeration system had broken down which necessitated ordering a new freezer. At the time of the hearing on April 11, 1974, he indicated that the kitchen remodeling had been completed and food service had been resumed about three weeks prior thereto. Paid bills totalling approximately $4,500 for a new broiler, refrigeration equipment, glassware, pots and pans, and other material and labor installed in the kitchen were admitted into evidence. Harding did most of the labor himself, but had also paid several thousand

---

[1] The "clear view" requirement set forth by statute was repealed, effective December 18, 1975, several months after the circuit court's judgment in this cause. (P.A. 79-1167.) Reliance on this requirement to sustain the revocation would be improper because a court of review will generally decide the case on the law as it exists at the time of its decision. (*Rios v. Jones* (1976), 63 Ill. 2d 488, 495, 348 N.E.2d 825; *Show of Shows, Inc. v. Illinois Liquor Control Commission* (1967), 86 Ill. App. 2d 109, 116-17, 230 N.E.2d 268; see *Shelton v. City of Chicago* (1969), 42 Ill. 2d 468, 473, 248 N.E.2d 121.) However, there still remains the question of whether plaintiffs operated a restaurant which appears to be the basis upon which a liquor license was issued.

dollars for additional labor to complete the project. During the time he was remodeling, only liquor had been served.

In respect to business revenues, it was established only a small percentage directly resulted from the service of food. Harding stated that the largest portion of revenue was derived from entertainment. Harding said that his principal business was entertainment and not the service of food. Thus, patrons were required to pay a cover charge of two or three dollars depending on the day of the week and were also required to purchase a minimum of two drinks. He explained: "People do not have to order food, they can if they wish."

The plaintiffs called two customers to testify concerning the food service. One stated he had eaten chicken within the previous two weeks and had ordered from the current menu. It was pointed out that chicken was not listed as an item on that menu which was introduced into evidence. The second witness was married to the secretary of the corporate plaintiff. He testified that he ate at the premises the previous evening and that food had been served during the previous 4½ years. The bartender also testified that in the three years he worked at the Quiet Knight food had been served.

■■ The standard of review in cases such as this is well settled. In *Daley v. Jack's Tivoli Liquor Lounge, Inc.* (1969), 118 Ill. App. 2d 264, 277, 254 N.E.2d 814, the court stated:

> "In cases of this kind, we, and the Circuit Court, and the License Appeal Commission are all required to accept the judgment of the Local Commissioner as to the credibility of the witnesses. It is only he, as the trier of the facts, who is authorized to assess credibility, weigh the evidence, reconcile conflicting evidence, if possible, and, if not possible, determine which witnesses are worthy of belief. [Citations.] Neither the Circuit Court nor this court should disturb the Commissioner's decision so long as it is supported by substantial evidence, and is neither arbitrary nor contrary to the manifest weight of the evidence."

See also *Sarytchoff v. License Appeal Com.* (1973), 11 Ill. App. 3d 735, 738, 297 N.E.2d 646; *Occhino v. Liquor Control Com.* (1975), 28 Ill. App. 3d 967, 972, 329 N.E.2d 353.

The question to be decided is whether plaintiffs operated a restaurant. Section 21 of the Liquor Control Act (Ill. Rev. Stat. 1973, ch. 43, par. 142) provides:

> "No person shall receive a local license to sell alcoholic liquor upon any premises as a restaurant nor as a club unless it has the qualifications respectively described in Sections 2.23 and 2.24 of Article I. No restaurant, licensed as such, shall sell alcoholic liquor except with meals."

Section 2.23 of the Liquor Control Act (Ill. Rev. Stat. 1973, ch. 43, par. 95.23) states:

> " 'Restaurant' means any public place kept, used, maintained, advertised and held out to the public as a place where meals are served, and where meals are actually and regularly served, without sleeping accommodations, such space being provided with adequate and sanitary kitchen and dining room equipment and capacity and having employed therein a sufficient number and kind of employees to prepare, cook and serve suitable food for its guests."

■■ Bearing in mind that the Local Liquor Control Commissioner is the sole judge of the credibility of the witnesses, and after considering all the circumstances established by the evidence presented, we find that the decision of the Local Liquor Control Commissioner, that the premises were not being operated as a "restaurant," is supported by substantial evidence and was not contrary to the manifest weight of the evidence presented at the administrative hearings. Harding testified that for about two months, commencing on January 14, 1974, no food was served. Nevertheless, liquor was sold during this period of time. In addition, he said that "people do not have to order food," although they could if they wished. Officer Rouzan observed beer being sold on the premises when there was no food. Moreover, the record established that only a small amount of revenue was attributable to the sale of food because the restaurant business was not the principal business. The principal business income was derived from entertainment; and secondly, the sale of liquor. While the Liquor Control Act does not specifically require that the restaurant business be the principal business, the statute does clearly forbid the sale of alcoholic liquor except with meals. The testimony shows that, even after the kitchen facilities were remodeled and reopened, customers did not have to order food. Considering all these circumstances, we have concluded that the Local Liquor Control Commissioner did not err when he found that the premises were not being operated as a resturant within the meaning of the Liquor Control Act.

■■ The licensees present several other arguments. They contend that defendants erroneously considered hearsay evidence when they considered evidence of what Harding told the police officers and what the unidentified waitress told Officer Rouzan. Although hearsay is not admissible in an administrative hearing (*Russell v. License Appeal Com.* (1971), 133 Ill. App. 2d 594, 598, 273 N.E.2d 650), admissions by a party or his agent are admissible as an exception to such rule (*Ryan v. McEvoy* (1974), 20 Ill. App. 3d 562, 565-66, 315 N.E.2d 38; *Stifel, Nicolaus & Co. v. Coloia* (1971), 2 Ill. App. 3d 224, 229, 276 N.E.2d 408.) Even if this

evidence was improperly admitted, it was harmless because Richard Harding unequivocally testified to substantially the same facts.

■■ The plaintiffs also cite cases from other jurisdictions which they say support their position that the establishment did not cease to be a restaurant simply because no food was served for a short period due to a temporary breakdown in kitchen facilities. We have examined these cases and find them distinguishable. But even accepting the plaintiffs' proposition, the lapse of two months is an unusually long period for a restaurant to be without food service facilities and it is undisputed that liquor was served during this period. In addition, it was established that upon resumption of operation, customers were not required to order food.

■■ Finally, the licensees point out that they invested a substantial amount of money to restore the restaurant operation. We do not find in this record evidence of any affirmative administrative acts by the municipality upon which the plaintiffs could have relied in good faith and which would make it unjust to revoke the license. The record indicates that the substantial portion of these moneys was expended after receipt of the two citations which precipitated this proceeding. There is no evidence that plaintiffs, acting in good faith, were somehow induced by defendants to believe that there was no violation of the law (*cf. De Loian v. Illinois Liquor Control Com.* (1969), 109 Ill. App. 2d 71, 74, 248 N.E.2d 689). Accordingly, the judgment of the circuit court is reversed and the revocation of license by the Local Liquor Control Commissioner and the revocation confirmation by the License Appeal Commission is affirmed.

Reversed.

LORENZ, P. J., and SULLIVAN, J., concur.