2 Ill. App.3d 224 (1971)
276 N.E.2d 408
STIFEL, NICOLAUS & COMPANY, Plaintiff-Appellee,
v.
JOHN COLOIA et al., Defendants-Appellants.
No. 54482.
Illinois Appellate Court  First District.
November 5, 1971.
*225 Vogel & Vogel, of Chicago, (L.H. Vogel, of counsel,) for appellant.
Schaller, Reilly and Daley, of Chicago, (James M. O'Shaughnessy, of counsel,) for the appellee.
Judgment affirmed.
Mr. PRESIDING JUSTICE ENGLISH delivered the opinion of the court:
Defendants appeal from a summary judgment for $9,830.10, being the amount plaintiff claims it overpaid defendants in forwarding to them the *226 proceeds of sale of 400 shares of stock in the National Union Electric Corporation (National Union) in which plaintiff had acted as broker for defendants.
The facts are taken from the pleadings and depositions on file with the trial court. In 1959, Louis Coloia, as agent for his brothers who are the defendants, arranged for purchase of the shares in question at $3.75 per share. The shares were originally purchased through a Mr. Petruzzi at another brokerage firm, who took defendants' account with him when he moved to plaintiff's firm. After he left there in 1961, it was handled by Albert Hoffman.
Until 1963, Louis Coloia kept himself well advised of the status of the National Union shares by checking the newspapers. In 1966, he noticed in the paper that National Union stock was still listed on the American Stock Exchange and selling for approximately $37. He called Hoffman and asked if this was the same firm, and was told that it was. Hoffman asked him to bring the shares in for examination to verify ownership, which he did on March 3, 1966. Hoffman looked at the certificates which were dated July 14, 1959, and registered in defendants' name, and told Louis that his brothers owned 400 shares of National Union. They discussed the growth of the company over the years, and Hoffman "advised that we stay with it" and watch its progress daily, which Louis did for about two weeks. Louis also told Hoffman, at their March 3rd meeting, that he had checked into the company's dividend record and discovered that there had been a 50¢ dividend in 1964 and a 70¢ dividend in 1965, neither of which had been received by defendants. In his presence and at his request, Hoffman dictated a letter of inquiry concerning the unpaid dividends to the company's registered agent, Marine Midland Grace Trust Company of New York. Hoffman later told him that he had not had a reply, and on March 19, when Louis went to see Hoffman again, another letter was written concerning these dividends.
On March 14, 1966, Louis directed plaintiff to sell 400 shares of National Union at the market price on that date for the account of his brothers, and plaintiff did so, selling 100 shares at $31.50 and 300 shares at $31.75. The following day, Louis delivered the stock certificates to Hoffman. On March 18, plaintiff sent its check in the amount of $12,370.10 to Louis, payable to defendants. The check was endorsed, cashed, and paid on or about March 23.
On approximately April 11, plaintiff received noticed from its correspondent in New York, to whom the certificates had been sent for their purchaser, advising that there had been a reverse split of the stock in question on May 8, 1964, as a result of which two-tenths of a new one-dollar *227 par value share had been issued in exchange for each of the then out-standing thirty-cent per value shares. Plaintiff was previously unaware of this reverse split. The result of the reverse split was that, after that date, including the date of sale, defendants' certificates for 400 shares actually represented only 80 current shares of National Union.
On April 11, 1966, Hoffman advised Louis of the reverse split; told him, and also defendants, that their account was short 320 new shares; and requested defendants to make delivery of 320 shares, or payment therefor; neither of which defendants did.
Plaintiff's claim, based on Count II of the Amended Complaint,[*] was that, because of a mutual mistake of material fact, defendants were unjustly enriched by $9,830.10, being the difference in the March 14, 1966 value between 80 shares and 400 shares of National Union. Judgment was entered on that theory and in that amount.
 1 Defendants' first contention is that plaintiff's motion for summary judgment was not supported by proof; specifically, that Section 57 of the Practice Act requires the filing of affidavits with motions for summary judgment, and that plaintiff's motion for summary judgment was unsworn and was not accompanied by any affidavits. Plaintiff's motion did, however, include substantial quotes from discovery depositions which had previously been filed with the court. Defendants cite Ruby v. Wayman, 99 Ill. App.2d 146, for the proposition that a motion for summary judgment must be construed most strongly against the moving party, a rule which we recognize, but it does not furnish adequate support for defendants' contention in this case.
The summary judgment statute (Ill. Rev. Stat. 1967, ch. 110, par. 57) provides in pertinent part:
"(1) For plaintiff. Any time after the opposite party has appeared or after the time within which he is required to appear has expired, a plaintiff may move with or without supporting affidavits for a summary judgment or decree in his favor for all or any part of the relief sought.
(3) Procedure. The opposite party may prior to or at the time of the hearing on the motion file counteraffidavits. The judgment or decree sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving *228 party is entitled to a judgment or decree as a matter of law." (Emphasis supplied.)
Supreme Court Rule 212 provides further, in this regard, that discovery depositions may be used "for any purpose for which an affidavit may be used." Ill. Rev. Stat. 1967, ch. 110A, par. 212(a) (4).
Continuing their argument on this point, however, defendants say that plaintiff's motion, being unverified, does not supply any sworn statement that the alleged excerpts from the depositions recited in the motion are, in fact, true excerpts therefrom. We consider this contention to be wholly without merit, as the motion clearly incorporates the depositions by reference, and there has been no objection to the form of the depositions themselves. In fact, defendants have relied extensively on the depositions in their briefing of the court.
In Allen v. Meyer, 14 Ill.2d 284, the trial court had considered motions for summary judgment which made reference to depositions which, as in the instant case, had previously been duly filed with the court. In affirming summary judgment, the Supreme Court said, at page 291:
"Before proceeding further, we should like to comment that the trial court's procedural handling of this case was correct beyond technical argument. Rule 15 of this court expressly provides that discovery depositions may be considered in passing upon motions for summary judgment, * * *."
Rule 15 referred to in this quotation is present Rule 191 without change in substance. Ill. Rev. Stat. 1967, ch. 110A, par. 191.
 2 We find that plaintiff's motion for summary judgment met all technical requirements of the applicable statute and rules.
 3-5 Defendants' second contention is that the deposition of Albert Hoffman, who had died prior to the hearing in this cause, was improperly considered by the trial court to determine that a reverse split of the stock in question had in fact occurred. The trial court, however, specifically stated that it did not consider the deposition of Hoffman:
"Depositions were filed in regard to the Defendants and I am excluding the deposition taken of the witness, Hoffman, who is deceased."
The trial judge also indicated that he would expunge the deposition of Hoffman from his mind. Defendants, for the first time in their reply brief, argue that any evidence of the reverse split, outside of Hoffman's deposition, constitutes hearsay in that the defendants' depositions indicate only that they had learned of the reverse split through Hoffman. They urge that no judgment can be based upon such incompetent evidence. (This same objection would, of course, have been applicable to the deposition testimony of Hoffman, who could only have testified *229 that he had been informed of the reverse split by Marine Midland.) The whole point comes too late, since hearsay evidence becomes part of the proof in the absence of timely objection. As stated in Town of Cicero v. Industrial Com., 404 Ill. 487, 495:
"Testimony, although hearsay and incompetent, if received without objection is to be considered and given its natural probative effect as if it was in law admissible. Kivish v. Industrial Com. 312 Ill. 311; Ascher Bros. Amusement Enterprises v. Industrial Com. 311 Ill. 258."
 6 Furthermore, defendant's agent, Louis Coloia, testified as to knowledge of the reverse split through the same source from which plaintiff had obtained the information:
"Well, this Marine Midland is the one that told me about the reverse split, that is how it was."
Had the trial court been asked to disregard this statement, and the statements of defendants concerning their knowledge of the reverse split, the court would have been correct in overruling the objections because the statements of defendants and their agent constituted admissions which are competent evidence as exceptions to the hearsay rule. On proper objection, hearsay is generally excluded because courts entertain doubt as to its trustworthiness, but there is an exception to inadmissibility where, as here, the parties or their agent testify to knowledge of a fact which is adverse to their position. This exception is fortified where the fact  the reverse stock split, in this case  was not disputed by any witness or by the pleadings.
In addition, the Amended Complaint makes a flat statement under oath that "there had been a reverse split of the common stock of National Union Electric Corporation on or about May 8, 1964, whereby Two-tenths (2/10) of a share of new One Dollar ($1.00) par value common stock of National Union Electric Corporation were issued in exchange for each share of the Thirty Cent ($.30) par value common stock of said corporation." This allegation was not denied by defendants' Answer.
We hold, therefore, that the trial court could properly find, as it did, that the occurrence of the reverse split had been established.
 7 Defendants contend, next, that the motion for summary judgment was improperly allowed because the following questions of fact need to be litigated:
1. Did plaintiff exercise due care in the handling of this account?
2. Was there a mutual mistake of fact?
3. Is plaintiff, by reason of negligence, liable for any loss resulting from its transaction?
4. Should not the loss fall upon plaintiff as the negligent party permitting its occurrence?
*230 There are two negative answers to the last two questions. First, defendants did not allege in any pleading, nor in their briefs, that they had suffered any loss whatsoever. They simply say, in effect, that they would like to keep the overpayment they received. Plaintiff's is the only loss, present or potential. Secondly, assuming the existence of negligence, as these two questions do, the mere stating of the issues shows them to raise questions of law and not fact.
 8 The matter of plaintiff's alleged negligence is, in our opinion, irrelevant as a matter of law. In Salvati v. Streator Township High School, 51 Ill. App.2d 1, a party was paid two salaries due to a mistake of fact, and it was held that the payor could recover the amount erroneously paid, irrespective of the payor's negligence. The court announced the general rule at pages 4 and 5:
"Where money is paid under a mistake of fact, which would not have been paid had the facts been known to the payors, it may be recovered. [Citation.] The fact that the person to whom the money was paid was not guilty of deceit or unfairness, but acted in good faith, would not prevent recovery of such sum [citation], nor does negligence of the payor preclude a recovery in such case (Devine v. Edwards, 87 Ill. 177)."
Further, the question of whether the money in dispute was paid out under a mistake of fact was settled as a matter of law by the case of Jenson v. Muting, 255 Ill. App. 514. The facts in that case are similar to those here, in that the parties to a stock sales transaction were mistaken as to the value of the stock, because the stock in question was an old issue which had been called for cancellation four years earlier. Both parties proceeded on the assumption that they were dealing in a more valuable current stock. The appellate court noted that the stock certificates themselves being but muniments of title, their inspection would not disclose their latent defect, and the plaintiff was allowed recovery of the amount paid above the true value of the stock. It is inescapable that plaintiff in the instant case, by mistake, paid defendants more than the proceeds of sale of their stock. Whether or not this mistaken overpayment was made negligently, it may be recovered, as actions of this nature are governed by equitable principles. Defendants have no right to retain their windfall. Toombs v. Lewis, 362 Ill. 181, 189.
The judgment is affirmed.
Judgment affirmed.
DRUCKER and LORENZ, JJ., concur.
NOTES
[*] Count I alleged that plaintiff had been required to buy on the market 320 shares of National Union to make delivery on defendants' sale of 400 shares, and sought to recover from defendants the amount it had paid for such shares, namely $13,645. This count was abandoned, however, at the time of plaintiff's motion for summary judgment.