The CHASE MANHATTAN BANK, Plaintiff-Appellant,

v.

LAKE TIRE COMPANY, INC., Defendant-Appellee.

No. 3–1285A333.

Court of Appeals of Indiana, Third District.

Aug. 13, 1986.

Rehearing Denied Sept. 30, 1986.

Douglas B. King, Katherine L. Shelby, Wooden, McLaughlin & Sterner, Indianapolis, for plaintiff-appellant.

Paul B. Huebner, Hammond, for defendant-appellee.

HOFFMAN, Judge.

In October 1975 appellee Lake Tire Company (Lake Tire) entered into a lease agreement with Scotti Commercial Company (Scotti) for the rental of a machine which was to bend pipe into mufflers which would fit different makes of vehicles. The lease contained the following clause:

"12. *ASSIGNMENT.* This lease, the equipment and any rental and other sums due or to become due hereunder, or any part of the foregoing, may be transferred or assigned by Lessor without notice, and in such event Lessor's transferee or assignee shall have, to the extent transferred or assigned to it, all rights, powers, privileges and remedies of Lessor hereunder. Lessee agrees that no such transferee or assignee shall assume any obligation of Lessor hereunder (except for the application pursuant hereto of any proceeds which shall be received by such transferee or assignee of insurance provided by Lessee), and that the obligations of Lessee hereunder shall not be subject, as against any such transferee or assignee, to any defense, setoff or counterclaim available to Lessee against Lessor and that the same may be asserted only against Lessor. It is understood and agreed, however, that Lessee may separately claim against Lessor as to any matters which Lessee may be entitled to assert against Lessor."

In December 1975 Scotti entered into a transaction with appellant Chase Manhattan Bank (Chase). In this transaction, Chase paid out the value of the machine to Scotti and took an assignment of the rights under the lease. At that time, Scotti provided Chase with a "package" which contained all the documents pertaining to the lease agreement between Lake Tire and Scotti. Included was a document indicating acceptance of the machine and an acknowledgement that the machine complied with the terms of the lease. The document also contains the following clause:

"Lessee hereby acknowledges lessor's right to assign its interest under the lease (the assignee being hereinafter called assignee), consents to any such assignments and in consideration of the assignee having advanced funds to lessor to finance the equipment described in the lease, agrees, as follows: (a) that its obligations to pay directly to the assignee the amounts (whether designated as rentals or otherwise) which become due from the lessee as set forth in the lease so assigned shall be absolutely unconditional and shall be payable whether or not the lease is terminated by operation of law, any act of the parties or otherwise, and its promises so to pay the same notwithstanding any defense, set-off or counterclaim whatsoever, whether by reason of breach of the lease or otherwise, which it may or might now or hereafter have as against the lessor (the lessee reserving its rights to have recourse directly against the lessor on account of any such defense, set-off or counterclaim); and (b) that, subject to and without impairment of the lessee's leasehold rights in and to the equipment described in said lease, lessee holds said equipment and the possession thereof for the assignee to the extent of the assignee's rights therein."

Both the lease and the acceptance and acknowledgement were signed by Len Hedinger on behalf of Lake Tire and his authority to sign the documents and the fact he did so are not questioned here.

Before accepting the assignment from Scotti, Chase investigated the financial status of Lake Tire. Having found no problems with Lake Tire's credit rating, the transaction was entered into and Chase filed a financing statement with the Secretary of State's Office indicating both the original lease and the assignment. Lake Tire was notified to make payments to Chase. Eleven payments were made when Hedinger notified Scotti and Chase he was not going to make additional payments because the machine would not function properly. Some time later, Scotti became insolvent and went through bankruptcy proceedings. Chase then filed this action against Lake Tire to collect the amount still owing on the lease plus late charges and attorney's fees. Lake Tire filed a counterclaim alleging breach of contract and seeking damages in the form of expenses incurred for the machine.

After a trial to the court, a judgment was entered whereby Chase was to take nothing by its complaint and Lake Tire was to have judgment against Chase in the amount of $24,771.45. Now on appeal, Chase presents what it states as five issues for review. However this case pivots on a single determination: whether or not the transactions involved come within the purview of Article 9 of the Uniform Commercial Code.

In reviewing the trial court's decision, the appellate court will give due regard to the opportunity of the trial court to judge the credibility of the witnesses. When the cause is tried to the court, it will be reversed only if the determination is clearly erroneous. Ind.Rules of Procedure, Trial Rule 52(A). The determination is clearly erroneous only when a review of all the evidence leaves a firm conviction that the trial court erred. *University Casework Systems v. Bahre* (1977), 172 Ind.App. 624, 362 N.E.2d 155, *trans. denied.*

The court found that Chase was the successor owner and lessor of the machine leased to Lake Tire and determined the case as it would have determined it had the original lessor been the complainant. The

characterization of the transaction between Chase and Scotti is critical to the determination of the status of the parties and their respective rights and liabilities.

Appellee argues the characterization of Chase as owner/lessor of the machine is mandated and binding as such was an allegation of material fact in Chase's pleading. While not deciding the exact allegation made by Chase when construing the complaint as a whole as is required, *see: McKinnon v. Parrill* (1942), 111 Ind.App. 343, 353, 38 N.E.2d 1008, *reh. denied*, Lake Tire cannot rely on any allegation of ownership in the complaint. A party who has denied the allegation, directly or indirectly, and thereby puts the same into issue may not then take advantage of an admission in the pleading of an adversary. *Brown v. Grzeskowiak* (1951), 230 Ind. 110, 102 N.E.2d 372, *reh. denied.* Chase's complaint alleged in pertinent part:

"1. On the 27th day of October, 1975, the defendant and Scotti Commercial Company executed a certain written lease. A copy of which is attached herein and marked 'Exhibit A'.

2. That on the 16th day of December, 1975, the Scotti Commercial Company duly signed said lease and all said rights to the plaintiff, the Chase Manhattan Bank.

3. That the plaintiff is an actual and bona fide owner of said lease."

Lake Tire responded:

"1. The defendant admits the allegations contained in rhetorical paragraph one (1) of plaintiff's complaint.

2. The defendant admits the allegations contained in rhetorical paragraph two (2) except that the said assignment was with recourse of the Chase Manhattan Bank to Scotti Commercial Company.

3. That defendant neither admits nor denies the allegations contained in rhetorical paragraph three (3) being without sufficient information."

Having pled inability to admit or deny, the response placed the matter in issue as a denial. Ind.Rules of Procedure, Trial Rule 8(B). Therefore Lake Tire cannot now take advantage of any possible admission contained in the assertion and the issue of the status of Chase is not foreclosed.

Article 9 of the U.C.C. found at IND. CODE § 26–1–9–101 *et seq.* applies to this case and dictates its resolution. The scope of Article 9 is set forth in IND.CODE § 26–1–9–102 subject to exclusions not applicable in this case:

"Sec. 102. (1) Except as otherwise provided in section 9–103, on multiple state transactions and in section 9–104 on excluded transactions, this Article applies so far as concerns any personal property and fixtures within the jurisdiction of this state

(a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, accounts or contract rights; and also

(b) to any sale of accounts, contract rights or chattel paper."

The comment to section 9–102 states the reason for the coverage:

"An assignment of accounts, contract rights or chattel paper as security for an obligation is covered by subsection (1)(a). Commercial financing on the basis of accounts, contract rights and chattel paper is often so conducted that the distinction between a security transfer and a sale is blurred, and a sale of such property is therefore covered by subsection (1)(b) whether intended for security or not, unless excluded by Section 9–103 or Section 9–104. The buyer then is treated as a secured party, and his interest as a security interest."

A security interest is defined in pertinent part as including "any interest of a buyer of accounts, chattel paper or contract rights which is subject to Article 9." IND.CODE § 26–1–1–201(37). Chattel paper is defined in IND.CODE § 26–1–9–105(b):

"(b) 'Chattel paper' means a writing or writings which evidence both a monetary

obligation and a security interest in or a lease of specific goods. When a transaction is evidenced both by such a security agreement or a lease and by an instrument or series of instruments, the group of writings taken together constitute chattel paper[.]"

The comments to § 26–1–9–105 allude to a transaction similar to that present in this case and find such within the purview of chattel paper under Article 9:

"Under the definition of 'security interest' in Section 1–201(37) a lease does not create a security interest unless intended as security. Whether or not the lease itself is a security agreement, it is chattel paper when transferred if it relates to specific goods. Thus, if the dealer enters into a straight lease of the tractor to the farmer (not intended as security), and then arranges to borrow money on the security of the lease, the lease is chattel paper."

Considering these provisions enacted by our legislature and the explanatory comments, the transaction between Chase and Scotti is covered by Article 9 whether it resulted in a sale of the rights under the lease or merely a security interest in same. *See: Ralston Purina Co. v. Detwiler, et al.* (1977), 173 Ind.App. 513, 518, 364 N.E.2d 180, *reh. denied, trans. denied.* Thus the passage of title to the lease or the true nature of the transaction is of no consequence in this case as Article 9 applies in either case. *See: In re Cripps* (1983) 31 B.R. 541, 36 UCC Rep Serv 1725 (Bankr.W.D.Okla.)

■ Since the transaction is governed by Article 9, IND.CODE § 26–1–9–206 applies to the waiver of defenses clause quoted

above. Section 26–1–9–206 provides in pertinent part:

"Sec. 206. (1) Subject to any statute or decision which establishes a different rule for buyers or lessees of consumer goods, an agreement by a buyer or lessee that he will not assert against an assignee any claim or defense which he may have against the seller or lessor is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under the Article on Commercial Paper (Article 3)."

Enactment of this statute by the legislature indicates a public policy approving the right and ability of the parties to determine their own contract and to predetermine the extent of risk and exposure each is to undertake. *See: General Bargain Center v. American Alarm Co.* (1982), Ind.App., 430 N.E.2d 407 addressing damage clauses, limitation of liability clauses and exculpatory clauses. Although § 9–206 has not been the subject of enlightening litigation in Indiana, the language and meaning of the statute seem clear: having signed the lease and the acceptance and acknowledgement, each of which contained a clause waiving defenses against the assignee, the waiver is enforceable against Lake Tire, except as to defenses assertable against a holder in due course, if Chase took the assignment for value, in good faith and without notice of claim or defense.

The defenses which may be asserted against a holder in due course[1] are not applicable here, and, contrary to appellee's

1. IND.CODE § 26–1–3–305 provides:

"Sec. 305. To the extent that a holder is a holder in due course he takes the instrument free from

(1) all claims to it on the part of any person; and

(2) all defenses of any party to the instrument with whom the holder has not dealt except

(a) infancy as defined in IC 1971, 34–1–67–1, to the extent that it is a defense to a simple contract; and

(b) such other incapacity, or duress, or illegality of the transaction, as renders the obligation of the party a nullity; and

(c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and

(d) discharge in insolvency proceedings; and

(e) any other discharge of which the holder has notice when he takes the instrument."

claim, Chase did take the assignment for value in good faith and without notice of claim or defense. Chase's status must be determined at the time of the execution of the assignment. *Chase Manhattan Bank, N.A. v. Coleman* (1985), R.I., 496 A.2d 935, 41 UCC Rep Serv 1439, 1442–1443. Therefore only the evidence which indicates what Chase knew or how Chase acted at the time of the transaction is relevant.

The testimony indicated the following facts. The transaction was an arms-length business transaction. There was no indication of common directors or mutual ownership of stock. While the founders of Scotti were said to have been bank executives, there was no indication they were associated in any manner with Chase or Chase's employees. Testimony indicated Scotti dealt with other banks also and that Chase in fact bought only a limited amount of Scotti's paper. The transaction between Scotti and Chase was just like hundreds of other transactions Chase had with other clients. The requirements of a credit rating investigation of the lessee and the submission of documents containing waiver of defenses clauses were common practices. These factors are all consistent with those found in *Chemical Bank v. Rinden Professional Association* (1985), 126 N.H. 688, 498 A.2d 706, 41 UCC Rep Serv 1035, to be indicative of good faith and lack of notice as required by § 9–206. In addition, and contrary to appellee's assertions, all testimony indicated no communication between Chase and Lake Tire to inform Chase of the problems with the machine until after making eleven payments to Chase. So there was no evidence to show notice of claims or defenses at the time of the transaction. Also there was uncontroverted testimony that Chase was unaware of any financial problems of Scotti until some time after the transaction at issue. This evidence is not indicative of a lack of good faith or notice of claims or defenses. Therefore, assessing Chase's position at the time of the transaction, Chase held a position like a holder in due course pursuant to § 26–1–9–206. Any action taken or knowledge acquired subsequent to the time of transacting the assignment could not change that status. Although appellee makes reference to numerous acts which it considers indicative of lack of good faith and notice, these acts occurred subsequent to entering into the transaction. Such acts are therefore irrelevant to Chase's status and the waiver of defenses clauses are enforceable against Lake Tire.

Lake Tire also urges on appeal the assignment clause in the lease is unenforceable because it is not conspicuous. The lease is a single sheet of paper, printed on both sides. It contains 15 separate clauses, 2 on the front and 13 on the back. Each clause is in small print with a subject indicator at the beginning set out in bolder, larger capital letters. The assignment clause is on the back of the sheet and all the print on the back is smaller and less bold. However, each paragraph still has a bolder, larger subject indicator at the beginning. Also, the front side of the lease contains two large and very boldly printed admonitions that the back contains additional clauses which are binding on the signatory.

Initially it is important to note that there is no conspicuousness requirement in Article 9 for a waiver of defenses clause. *See:* IND.CODE § 26–1–9–206. However, even if such clause were required to be conspicuous, it is sufficiently so in this case. IND.CODE § 26–1–1–201(10) provides a term is conspicuous when a reasonable person against whom it is to operate ought to have noticed it. Here the type and admonitions together would be noticed by the reasonable person. *See: Chase Manhattan Bank, supra,* arriving at the same conclusion in litigation concerning an identical contract.

Finally, appellee urges the waiver of defenses clauses are unconscionable. However, such clauses have been specifically rendered enforceable in this situation by the legislature's adoption of the statute. While the arguments of unconscionability may have been assertable against Scotti, the fact Scotti subsequently went bankrupt

does not provide a legal ground to violate the rights of the assignee. *Chemical Bank, supra.* These transactions forming the basis for this litigation were between business entities, and the fact one party's position turned out to be better than another's does not render the contract unenforceable. "A contrary holding would not only have a chilling effect on loans made by financial institutions but would mean that the law allows the plain meaning of covenants to be declared nugatory whenever a bad bargain results." *Chemical Bank, supra,* 41 UCC Rep Serv at 1044 quoting *B.V.D. Co. v. Marine Midland Bank-New York* (1974), 46 A.D.2d 51, 53, 360 N.Y.S.2d 901, 904.

The trial court findings being clearly erroneous, the judgment is reversed and remanded with instructions to enter judgment in favor of Chase on its complaint and against Lake Tire on its cross complaint.

Reversed and remanded.

STATON, P.J., and GARRARD, J., concur.