MONROE FINANCIAL CORPORATION, Appellant (Plaintiff Below),

v.

E. Ruth DiSILVESTRO, Appellee (Defendant Below).

No. 53A01–8803–CV–00090.

Court of Appeals of Indiana, First District.

Oct. 20, 1988.

Rehearing Denied Nov. 22, 1988.

David L. Ferguson, William K. Deer, Ferguson, Ferguson & Lloyd, Bloomington, for appellant.

Andrew C. Mallor, Mallor, Grodner & Bohrer, Bloomington, for appellee.

SULLIVAN, Judge.

Plaintiff-appellant, Monroe Financial Corporation (MFC), appeals the negative judgment of the Monroe Superior Court on its suit seeking to recover a sum of money paid in error to defendant-appellee, E. Ruth DiSilvestro (DiSilvestro). The money paid represented the market price for 62 shares of stock in Avery International Corporation. In fact DiSilvestro owned shares in Avery, Inc., the shares of which were trading at a substantially lower figure.

The issues before us are as follows:

I. Whether MFC's mistake in quoting a prospective sales price for Avery International Corporation instead of for the shares in Avery, Inc. actually owned by DiSilvestro, permits MFC to recover the amount paid as a result of that mistake.

II. Whether DiSilvestro substantially changed her position prior to the discovery of the mistake so as to bar MFC from recovering the proceeds.

The facts germane to this appeal are gleaned from an approved statement of the evidence in conformity with Ind. Rules of Procedure, Appellate Rule 7.2(A)(3)(c).

DiSilvestro owned 62 shares of Avery, Inc. stock. Having no special knowledge or expertise regarding stock transactions, DiSilvestro's husband, Frank, telephoned MFC on October 20, 1987 to determine at what price Avery, Inc. was trading. He spoke to Wayne Schuman (Schuman), a professional stockbroker and vice-president of MFC, who informed Frank that Avery, Inc. was trading at $38.50 per share. In fact, Avery, Inc. was not trading at that price. Schuman had made a mistake in researching the stock value. When consulting his list of stocks, Schuman saw only one Avery listed, Avery International Corporation. Schuman mistakenly assumed Ruth owned Avery International Corporation and quoted that price.

DiSilvestro brought the stock certificates to MFC that afternoon at which time Schuman informed her that the trading price of the stock had decreased 50 cents. This quote also represented the price at which Avery International Corporation was trading. DiSilvestro decided to sell her shares of Avery, Inc., and Schuman agreed that MFC would sell them as an agent for a commission. She left the stock certificates with Schuman, and he placed a sell order with the company in New York (the Company) that executes transactions entered into by MFC. On October 27, 1986, DiSilvestro returned to MFC and picked up a check in the amount of $2,304.97. The check represented the market price of 62 shares of Avery International Corporation at $38 per share less the commission retained by MFC for services rendered as agent for her in the transaction.

MFC, as it usually does in the course of its business, had advanced the proceeds of the stock sale to DiSilvestro prior to receiving the actual funds from the Company. Upon receiving the stock certificates from MFC, however, the Company detected the discrepancy in names. The Company informed Schuman of the mistake by telephone and returned the stock certificates directly to DiSilvestro. By the time MFC first notified her of Schuman's mistake on October 30, 1987, DiSilvestro had already spent a significant portion of the proceeds

on home improvements. MFC requested that DiSilvestro return the money. She refused. Thereafter, MFC brought suit against her under the small claims procedures seeking to recover the $2,304.97. Following a hearing, the trial court issued a judgment permitting DiSilvestro to retain the proceeds of the transaction.

The trial court issued special findings of fact and conclusions of law as permitted by Ind.Rules of Procedure, Trial Rule 52(A). We will not reverse a trial court's judgment entered pursuant to T.R. 52 unless the findings of fact, conclusions of law or judgment are clearly erroneous. *Chase Manhattan Bank v. Lake Tire Co.* (1986) 3d Dist.Ind.App., 496 N.E.2d 129. A judgment is clearly erroneous if not supported by the conclusions of law. Conclusions of law are clearly erroneous if unsupported by the findings of fact. *Lafayette Realty Corp. v. Vonnegut's, Inc.* (1984) 1st Dist. Ind.App., 458 N.E.2d 689. Findings of fact are clearly erroneous if the record discloses there were neither facts nor inferences to support them. In determining whether the findings are clearly erroneous this court will not reweigh the evidence. Rather, we will consider only that evidence in the record and the reasonable inferences to be drawn therefrom which support the findings. *Baker v. Compton* (1983) 2d Dist. Ind.App., 455 N.E.2d 382. The judgment controls as to any issue not covered by the special findings. *Mishawaka Brass Manufacturing, Inc. v. Milwaukee Valve Co.* (1983) 3d Dist.Ind.App., 444 N.E.2d 855, *trans. denied.*

## ISSUE I

### RECOVERY OF FUNDS MISTAKENLY PAID

It must be kept in mind that this litigation involved a claim by MFC to recover moneys mistakenly paid to DiSilvestro. It does not encompass any claim by DiSilvestro that MFC failed to perform a contract to sell Avery, Inc. stock or that such contract was breached by MFC.[1]

MFC contends DiSilvestro may not retain the money paid to her. It claims that to allow her to retain the money would constitute unjust enrichment. Under such circumstances, MFC argues it is entitled to restitution. DiSilvestro contends that a party making a unilateral mistake of fact is not entitled to restitution unless the mistake is basic to the contract and known to the other party, or circumstances are such that the other party should have known of the mistake. She claims she was unaware of the value of the stock and relied upon the expertise of MFC to value the stock. She claims further that recovery should be denied because she has expended the proceeds of the sale and substantially changed her position as a result.

Relatively few reported cases have been found which have considered whether the proceeds from a purported sale of stock other than that intended by the customer may be recovered. In fact, our research has failed to disclose any Indiana authority which has addressed the issue. However, other jurisdictions have had occasion to address the subject.

Almost identical fact patterns are presented in *Castock Corp. v. Bailey* (1985) 128 Misc.2d 1068, 492 N.Y.S.2d 921, and *Donner v. Sackett* (1916) 251 Pa. 524, 97 A. 89. In *Castock*, the plaintiff-brokers sold 1,000 shares of Microbiological Sciences, Inc. stock for Bailey and delivered a check to her in the amount of $7,088.08. The stock certificate given by Bailey to the plaintiff-brokers, however, was for shares of Microbiological Research Corporation/Microbiological Sciences, Inc. This stock was worth between seven and ten cents a share, whereas the stock which was sold was worth approximately $7 per share. The mistake was solely the result of the conduct of the plaintiff-brokers. The trial court denied the plaintiff's complaint seek-

---

1. The contract here was to sell shares in Avery, Inc. as agent for DiSilvestro. MFC did not agree to purchase those shares or any other stock from DiSilvestro. *See Donner v. Sackett* (1916) 251 Pa. 524, 97 A. 89. The shares in Avery, Inc. were not sold. However, whether MFC has failed to perform or in performing has breached the contract are not questions before us.

ing to recover the overpayment of proceeds following the erroneous sale of stock. Upon appeal the *Castock* court reversed the trial court, holding that money paid under a mistake of fact may be recovered however careless the party paying it may have been. 492 N.Y.S.2d at 922.

In *Donner, supra*, 97 A. 89, the customer owned shares of stock in the Pittsburgh Westmoreland Coal Company, which was quoted to him by the brokers as trading at $60 per share. In fact, the customer's stock was selling at only a fraction of $60 per share. Upon receiving the quotation, the customer ordered the brokers to sell his stock at $55 per share or better, and they in turn communicated the order to their correspondents on the exchange. After the sale was reported completed, the brokers advanced the proceeds to the customer and received his certificates. Shortly thereafter it was discovered that the correspondents had mistakenly sold the stock of the Westmoreland Coal Company. The brokers returned the certificates to the customer and requested that the customer repay the money, which he refused to do. In affirming a judgment for the brokers, the Pennsylvania Supreme Court held that money paid under a mistake of fact may be recovered where it is clear that the party receiving the money will sustain no damage if compelled to make repayment. 97 A. at 90.

Also factually similar is *Smith v. Rubel* (1932) 140 Or. 422, 13 P.2d 1078. A broker purported to sell shares of a company's Class A stock when the customer owned Class B stock in that company. A transaction for sale of Class A stock was completed, and the proceeds were forwarded to the customer in an amount twice the value of the Class B stock. The error was discovered and cancellation of the sale was secured. The customer's broker-agent requested return of the proceeds of the erroneous sale. The customer refused. Reversing a judgment for the customer, the Oregon Supreme Court stated the general rule applicable to actions for restitution based on a unilateral mistake:

"[P]ayment made under a mistake of fact which induces the belief that the other party is entitled to receive the payment when, in fact, the sum is neither legally nor morally due to him, may be recovered, provided the payment has not caused such a change in the position of the payee that it would be unjust to require the refund." 13 P.2d at 1079. Under the facts stated, the court required the customer to return the proceeds.

A similar result was reached in *Stifel, Nicolaus & Co. v. Coloia* (1971) 2 Ill. App.3d 224, 276 N.E.2d 408. There, the broker sold 400 shares of stock in a certain company and forwarded the proceeds to the customer. The broker was unaware, however, that two years earlier there had been a five-to-one reverse stock split. As a result, the customer's certificates for 400 shares actually represented only 80 current shares. To account for the mistake the broker requested that the customer deliver 320 new shares or return the corresponding portion of the proceeds. When the customer refused to comply, the broker brought suit and obtained a summary judgment in the amount of the overpayment. On appeal, the customer maintained that the broker's negligence presented a question of fact not subject to summary judgment. In affirming the grant of summary judgment, the Illinois Court of Appeals observed that money paid under a mistake of fact may be recovered where it would not have otherwise been paid had the facts been known. The court held that the question of the broker's negligence was irrelevant as a matter of law. 276 N.E.2d at 412. Under equitable principles the customer had no right to retain the overpayment. *See also W.E. Richmond & Co. v. Security National Bank* (1933) 16 Tenn.App. 414, 64 S.W. 2d 863 (broker entitled to recover the entire proceeds of the erroneous sale of stock with similar name to that held by customer regardless of broker's negligence in failing to discover the mistake); *Dobbs v. Perlman* (1939) 59 Ga.App. 770, 2 S.E.2d 109 (broker entitled to recover proceeds from mistaken sale of stock with same name but worth only ⅙ of its apparent face value due to corporate reorganization); *Pierce v. Schnitzer* (1937) 279 Mich. 341, 272 N.W.

699 (broker recovered the excess proceeds on the sale of stock which was more valuable than that actually held by customer due to a corporate reorganization unknown to either party); *Toombs v. Lewis* (1935) 362 Ill. 181, 199 N.E. 127 (broker entitled to recover proceeds of mistaken sale of interest bearing certificates of a more valuable issue than those owned by customer).

In *Winslow, Cohu & Stetson, Inc. v. Skowronek* (1975) 136 N.J.Super. 97, 344 A.2d 350, the broker mistakenly issued certificates to customer for preferred stock after purchasing common stock on his behalf. The broker was permitted, under an undue enrichment and restitution theory, to recover the excess amount realized by the customer and the difference in dividends paid thereon prior to such sale, even though five years had elapsed and the customer had sold the preferred stock without knowledge of the broker's mistake and negligence. Only last year, the United States Court of Appeals for the Sixth Circuit reached the same conclusion despite the recipient's assertion of negligence on the part of the broker. *Shearson/American Express, Inc. v. Mann* (1987) 6th Cir., 814 F.2d 301.

█ In the above cases the courts recognized that as a general rule money paid under a unilateral mistake of fact may be recovered when it would have not been otherwise paid, even though the party paying it may have been careless. This comports with the law of this state as enunciated in *Stotsenburg v. Fordice* (1895) 142 Ind. 490, 41 N.E. 313, wherein it was stated that money paid under a mistake of fact, which the payor is under no legal obligation to pay, may be recovered, notwithstanding a failure to employ the means of knowledge which would disclose the mistake. *Accord City of Indianapolis v. McAvoy* (1882) 86 Ind. 587; *Lewellen v. Garrett* (1877) 58 Ind. 442; *Brown v. College Corner and Richmond Gravel Road Co.* (1877) 56 Ind. 110. *Best v. Best* (1984) 3d Dist.Ind.App., 470 N.E.2d 84.

█ DiSilvestro contends, however, that the doctrine of mistake governs the transaction. She argues that under this doctrine a party who makes payment under a unilateral mistake of fact is not entitled to restitution unless the mistake is basic to the contract and known to the other party or the circumstances are such that the other party should have known of the mistake. She relies totally upon *Foster & Marshall, Inc. v. Pfister* (1984) 66 Or.App. 685, 674 P.2d 1215, in support of her argument. This case was also cited in the conclusions of law entered by the trial court in support of its judgment.

In *Pfister* the brokerage firm entered into a contract to purchase 100 shares of stock in a company from Pfister. As a result of its faulty research in determining the price, the brokerage firm agreed to buy the stock from Pfister at a value ten times the actual market price and delivered a check to him for that amount. The Oregon Court of Appeals rejected the firm's argument that it was entitled to restitution based upon the firm's unilateral mistake in determining the price of the stock.

Both the trial court and DiSilvestro fail to recognize, however, that the brokers in *Pfister* purchased the stock from the defendant as a principal. The firm determined for itself the value of the stock and acquired its ownership. Accordingly, a contract of sale had been entered into between the parties. Because the firm was attempting to avoid a consummated sale and its contract as a principal, the doctrine of mistake governed the transaction. This distinction was noted by the *Pfister* court while discussing *Smith, supra,* 13 P.2d 1078. As discussed above, the Oregon Supreme Court permitted the broker to recover proceeds paid after an erroneous sale of stock where the broker was acting as an agent for the customer. *Smith* was cited with approval in *Pfister.*

In the present case, MFC did not purchase the stock as a principal. Although the trial court made no direct finding of fact on this question, it is clear from the statement of the evidence that MFC was acting as an agent for DiSilvestro in the stock transaction, not purchasing it as a principal from her. MFC mistakenly sold shares of stock in a company not held or

intended to be sold by DiSilvestro and delivered to her the proceeds of that sale in exchange for a commission. In essence DiSilvestro retained ownership of the stock certificates and had possession of the proceeds from the erroneous sale. Accordingly, MFC was entitled to recover the proceeds paid to DiSilvestro following its erroneous sale of Avery International Corporation on her behalf.

## ISSUE II

### DETRIMENTAL RELIANCE AND CHANGE OF POSITION

■ The rule permitting a party to recover money paid under a unilateral mistake of fact is subject to a limitation. That is that the party receiving the money must not have so changed his position so as to make it inequitable to require him to make repayment. The result reached in each of the cases discussed above was based upon the court's determination that the money paid by reason of the mistaken sale had not caused the party receiving the money to change his position such that requiring repayment would be inequitable. Likewise, Indiana courts recognize that a payment made under a mistake of fact may not be recovered where the party receiving the money has changed his position to his prejudice in reliance upon the payment and cannot be restored to status quo. *Hullet v. Cadick Milling Co.* (1929) 90 Ind.App. 271, 168 N.E. 610.

■ DiSilvestro argues that upon receiving the payment of $2,304.97 and prior to learning of the mistake, she expended nearly $2,000 on redecorating and home improvement equipment, and that it would therefore be inequitable to require repayment. MFC argues DiSilvestro did not rely to her detriment upon receiving the payment. It contends that by purchasing furniture and appliances, DiSilvestro obtained value for value and therefore retained the benefit of the money paid to her.

As far as we can discern Indiana courts have not considered whether the application of money paid under a mistake of fact to purchase tangible property constitutes a detrimental change of position. In support of its argument that DiSilvestro has not detrimentally changed her position MFC cites *Ohio Co. v. Rosemeier* (1972) 32 Ohio App.2d 116, 288 N.E.2d 326. In *Rosemeier* a stockbroker mistakenly sold shares of a California corporation instead of the customer's unlisted stock of little value in a similarly named Colorado corporation. Before the mistake was discovered the customer had applied the proceeds of the sale to the payment of an existing mortgage on her home and other debts. In determining whether there had been a detrimental change of position, the Ohio Court of Appeals noted that the customer merely converted the cash into a paid mortgage and retained the value originally represented by the mistaken payment. The court held that such an expenditure did not constitute a detrimental change of position. 288 N.E. 2d at 329. *Rosemeier* cited with approval *Donner, supra*, 97 A. 89.

In *Donner*, the broker recovered although defendant had used the money to pay some of his debts. The court reasoned that it was defendant's duty "to pay his debts, whether he sold or kept the stock. It is not becoming that he asks to be relieved from paying back the money which he received by mistake for comparatively worthless stock, because he turned it over to a creditor." 97 A. at 90. Similarly, in *Castock, supra*, the broker was permitted to recover despite defendant's expenditure of the funds "to pay debts and purchase tangible property or benefits." 492 N.Y. S.2d at 922–23. *See also Skowronek, supra*, 344 A.2d 350.

Even where the payee used the money mistakenly paid as downpayments on three parcels of investment real estate and in doing so incurred substantial debt obligations, the court held that this did not constitute a detrimental change of position sufficient to preclude the broker's recovery. In *Shearson/American Express, Inc., supra*, 814 F.2d at 306, the Court held:

"While appellant assumed new debt obligations, the value of the mistaken payment has not been lost. We find this

case, for analytical purposes, indistinguishable from *Rosemeier [supra]*."

If we were to hold that DiSilvestro has successfully circumvented the duty to repay the amount mistakenly paid by MFC due to her purchases and expenditures, we would be encouraging payees to hastily convert such receipts into tangible personal property in order to avoid a clear equitable duty. We should not adopt a principle of law which encourages a race to furniture and appliance stores.

MFC is entitled to recover the amount paid to DiSilvestro less any diminution in value of the Avery, Inc. stock which may have occurred as a result of MFC's failure to consummate the sale. *See Western Casualty & Surety Co. v. Kohm* (1982) Mo. App., 638 S.W.2d 798, in which the defendant used the money mistakenly paid to purchase a car. The court there stated:

"Normally this type of change is *not* sufficient to bar restitution, since a purchaser generally receives something of value for his money." 638 S.W.2d at 801 (original emphasis).

To the same effect is *Messersmith v. G.T. Murray & Co.* (1983) Wyo., 667 P.2d 655; *Alexander Hamilton Life Insurance Co. of America v. Lewis* (1977) Ky., 550 S.W.2d 558. *See also* Annot., 40 A.L.R.2d 997, § 5 at 1013 *et seq.*

The trial court in ordering restitution may fashion the judgment so as to protect DiSilvestro from being unduly burdened. Among other possibilities available to the trial court is the possibility that a restitution judgment for $2,304.97 might be satisfied by delivery to MFC of those items purchased plus any cash amount as may represent the difference between the sum spent by DiSilvestro and the $2,304.97 paid by MFC.

Notwithstanding the flexibility with which the trial court might frame the judgment, the judgment upon appeal is in error and is hereby reversed with instructions to enter judgment for MFC.

RATLIFF, C.J., concurs.

NEAL, J., dissents with opinion.

NEAL, Judge, dissenting.

While conceding that MFC would not be entitled to recover if DiSilvestro had changed her position to her prejudice so that it would be inequitable to require her to make restitution, the majority opinion then proceeds to ignore, not merely reweigh, the evidence. Paraphrasing ancient legal bromides, the majority bases the rationale for its conclusion solely upon the extraordinary statements that "we would be encouraging payees to hastily convert such receipts into tangible personal property in order to avoid a clear equitable duty," and "we should not adopt a principle of law which encourages a race to furniture and appliance stores." At 385.

Indiana courts have not considered whether the application of money paid under a mistake of fact to purchase tangible property constitutes a detrimental change of position. In support of its argument that DiSilvestro has not detrimentally changed her position, MFC cites *Ohio Co. v. Rosemeier* (1972), 32 Ohio App.2d 116, 288 N.E.2d 326. In *Rosemeier* a stockbroker mistakenly sold shares of a California corporation instead of the customer's unlisted stock of little value in a similarly named Colorado corporation. Before the mistake was discovered the customer had applied the proceeds of the sale to the payment of an existing mortgage on her home and other debts. In determining whether there had been a detrimental change of position, the Ohio Court of Appeals noted that the customer merely converted the cash into a paid mortgage and retained the value originally represented by the mistaken payment. The court held that such an expenditure did not constitute a detrimental change of position. 288 N.E. 2d at 329. Rosemeier cited with approval *Donner v. Sackett* (1916), 251 Pa. 524, 97 A. 89.

In *Donner* the customer alleged he had detrimentally changed his position due to the fact that he had used the proceeds of the sale to pay some of his debts. The court rejected this contention, pointing out that the customer had a duty to pay his debts regardless of whether he sold or kept

the stock. The court held that the customer would not be damaged by being compelled to make repayment. 97 A. at 90. Likewise, in *Castock Corp. v. Bailey* (1985), 128 Misc.2d 1068, 492 N.Y.S.2d 921, the court held the discharge of a debt or the expenditure of money which was otherwise required did not constitute a detrimental change of position sufficient to excuse repayment. 492 N.Y.S.2d at 922.

Under these cases MFC maintains DiSilvestro did not change her position to her detriment because she retained the value of the money by purchasing home improvement equipment. I disagree. In each of the cases relied upon by MFC the courts held that the expenditure of money paid under a mistake of fact to discharge a debt did not constitute detrimental reliance. The underlying rationale of these cases is that an individual who receives money under a mistake of fact is not excused from repayment where he has expended the money in a way which he was otherwise required to. In each of the cases discussed above the defendant had applied the money received to the payment of an existing mortgage or to pay off other pre-existing debts.

In this case the evidence reveals that MFC is a professional stockbroker with connections of some sort in New York. In reliance upon MFC's professed expertise in stock matters, DiSilvestro sold her stock through MFC, upon MFC's terms, and upon MFC's dictated price. Without any knowledge of MFC's self-induced negligence she spent the money and it is gone. Under the majority's unfortunate ruling, DiSilvestro will now have a judgment lien upon her residence, and if she is unable to pay it she will lose her home upon an execution sale. Absent MFC's negligence, there would have been no sale, no purchase of improvements, and no judgment lien. It is to be emphasized that this is not the payment of an old debt, but the incurrence of new obligations in reliance upon a misplaced trust in MFC. If the facts of this case do not show a detrimental change of position, I am at a loss to know what facts would so qualify.

The majority has ignored the well established rule of appellate review that we do not reweigh the evidence or adjudge the credibility of the witnesses, such being the function of the trial court. In this case it was for the trial court, sitting without a jury, to decide whether or not DiSilvestro had changed position to her detriment. It decided that issue in the affirmative. The majority has now reweighed the evidence in clear violation of its appellate function.

I support the rule that would protect hapless citizens from the inexcusable mistake of professional brokers, and would affirm the decision of the trial court.