B.V.D. COMPANY, INC., et al., Respondents, *v.* MARINE MIDLAND BANK–NEW YORK et al., Appellants, et al., Defendants. (Action No. 1.)

MARINE MIDLAND BANK–NEW YORK, Appellant-Respondent, *v.* B.V.D. COMPANY, INC., Respondent-Appellant. (Action No. 2.)

First Department, November 19, 1974.

*Harold N. Schwinger* of counsel (*Leonard Zalkin* with him on the brief; *Zalkin, Rodin & Goodman,* attorneys), for appellants in Action No. 1 and appellant-respondent in Action No. 2.

*Alan E. Golomb* of counsel (*Milton R. Ackman* with him on the brief; *Fried, Frank, Harris, Shriver & Jacobson,* attorneys), for respondents in Action No. 1 and respondent-appellant in Action No. 2.

STEUER, J. Two appeals in related actions are before the court. The background facts are those set out in the pleadings. Further facts from the same sources are stated when their relevance so requires.

It appears that one Richard S. White, who did business through a number of corporations (herein the White corporations), sometime in 1968 approached the B.V.D. Company, Inc. (BVD) with a view to mechanizing certain of the latter's manufacturing operations. An agreement was reached whereby White, through one of his corporations, would design and manufacture certain machines which it was contemplated would perform operations then being done by manual labor. BVD advanced $1,404,000 to cover the cost of designing and fabricating these machines. Seven such were made. These were delivered to BVD under leases by which BVD rented the machines. The leases are identical except as to the amount of rental and the description of the machine. After execution of the leases, with BVD's knowledge and consent the rentals for four of the machines were assigned to Marine Midland Bank (herein the bank) and for three to First National City Bank. By the terms of the assignments the banks did not undertake to perform any of the obligations of the lessor, but BVD represented in writing to the banks that it would pay the rentals "without deduction or set-off, except as permitted by the Leases." No claim is made that any deduction or setoff per-

mitted by the leases is here involved. This writing of BVD has all the elements of an estoppel certificate. It further agreed that no change in the terms of the lease would be made without written consent of the banks.

The machines failed to perform as expected, and in September, 1970 a White corporation not the lessor assignor agreed to forego further rentals until the machines could be made to produce at 70% of capacity. The banks were not parties to this agreement. Later BVD concluded that the machines could never be made to work satisfactorily and tendered them back subject to return of the $1,404,000 advance. This was not accepted. BVD made no further rental payments.

Thereupon BVD brought an action (Action No. 1) against the White corporations and the banks to rescind the leases. Marine Midland Bank sued BVD (Action No. 2) for the rentals. In that action BVD pleaded 10 separate affirmative defenses. The bank moved to dismiss these, and that motion is the subject of the first appeal.

Of these defenses, the eighth and ninth were stricken by Special Term. No appeal had been taken with respect to the eighth defense. The ninth pleads a claimed jurisdictional bar which plainly does not apply and needs no discussion. Of the remaining eight, the first three plead fraud. The others plead breach of warranty, breach of contract, modification and failure to fulfill a condition precedent. All of these latter are plainly barred by the exculpatory provisions of the leases and the terms of the estoppel documents. BVD, however, claims that the exculpatory clauses are unenforceable as a matter of public policy. The authorities relied on for this claim deal with situations where a more or less unsophisticated party is trapped by clauses buried in the text of an agreement and not called to the party's attention. They can have no application to agreements made by a corporate body of vast experience, continuously advised by counsel at every step in the proceeding. In fact, public policy would favor the exact opposite conclusion. BVD could not but know that the admissions and concessions requested of it were for the purpose of assuring the lending bank that it had a good security, and it cannot, after the event, be heard to say that it should not be held responsible. A contrary holding would not only have a chilling effect on loans made by financial institutions but would mean that the law allows the plain meaning of convenants to be declared nugatory whenever a bad bargain results. The defenses are not available and should be dismissed.

The defenses based on fraud require more detailed exposition. The fraud alleged consists of statements made by White and his agents to induce the underlying agreement. As the leases were concomitants of this agreement, they would be similarly affected by any fraud that would invalidate the original contract. These representations fall into two general categories —what the machines would do and accomplish, and the White corporations' experience in building similar machines. As to the first, bearing in mind that these were machines which were intended to fit the lesseer's peculiar needs and where in no sense stock items, it is apparent that these so-called representations were really predictions as to the capabilities and qualities of equipment to be manufactured. A failure to live up to the specifications would in ordinary circumstances be a breach of warranty or of the contract. It would only become fraudulent if the maker knew that the machines would not so perform. This is not even alleged.

The remaining claim of fraud is that White represented that he had sold or leased machines to other manufacturers and that those customers were satisfied with their performance. Falsity, *scienter* and reliance are alleged. Moreover, it is alleged that the bank was aware of these facts. While the pleading of this knowledge by the bank is inept, sufficient is shown to defeat summary judgment. As what the bank knew is peculiarly a fact within its own competence, a showing of facts which might lead to that conclusion is sufficient to raise an issue at this time. After a reasonable time for discovery proceedings the bank may, if so advised, renew its motion (CPLR 3212, subd. [f]).

The bank argues that regardless of fraud it is in the position of an innocent purchaser for value of a negotiable instrument. It is unnecessary to decide this question because if the bank had knowledge of a fraud it would not be an innocent purchaser. The first three defenses are valid and the motion for summary judgment was properly denied.

BVD is also suing to rescind the original agreement with the White corporations and to rescind the leases. The banks moved to dismiss. The same considerations affect this action as do the other action, and the same disposition should be made. However, in the complaint the leases are neither set out nor described in such detail that they can be readily identified. This should be corrected. The applications for interlocutory relief were properly disposed of at Special Term.

The order entered April 8, 1974, in New York County (CHIMERA, J.) should be modified on the law to strike the fourth,

fifth, sixth, seventh and tenth affirmative defenses and, as so modified, affirmed without costs and with leave to renew the motion for summary judgment after the completion of discovery proceedings or a reasonable period to complete the same.

The order entered March 11, 1974, in New York County (CHIMERA, J.) should be modified on the law without costs to dismiss the complaint against the moving defendants with leave to plaintiffs to serve an amended complaint setting out copies of the leases referred to, and, in the event such complaint is served, with leave to moving defendants to renew their application after the completion of discovery proceedings or a reasonable period to complete the same.

MARKEWICH, J. P., KUPFERMAN, CAPOZZOLI and YESAWICH, JJ., concur.

Order, Supreme Court, New York County, entered on April 8, 1974, unanimously modified, on the law, to strike the fourth, fifth, sixth, seventh and tenth affirmative defenses and, as so modified, affirmed, without costs and without disbursements, and with leave to renew the motion for summary judgment after the completion of discovery proceedings or a reasonable period to complete the same.

Order, Supreme Court, New York County, entered on March 11, 1974, unanimously modified, on the law, without costs and without disbursements, to dismiss the complaint against the moving defendants with leave to plaintiffs to serve an amended complaint setting out copies of the leases referred to, and, in the event such complaint is served, with leave to moving defendants to renew their application after the completion of discovery proceedings or a reasonable period to complete the same.