OPINION OF THE COURT
David O. Boehm, J.
The plaintiff, Chase Manhattan Bank (hereinafter Chase), is moving for an order granting summary judgment pursuant to CPLR 3212 in this action to recover the balance due and owing on an equipment lease executed on November 11, 1974 by Finger Lakes Motors, Inc. (hereinafter Finger Lakes), a car dealer, and Scotti Commercial Co., a muffler franchisor (hereinafter Scotti). The lease was assigned to Chase by Scotti on September 8, 1976. Chase also seeks summary judgment upon a guarantee executed by defendants, Long and Mosier, on the same date as the lease agreement, which guarantee was also assigned to Chase by Scotti.
The lease and the guarantee were executed as part of a 10-year "exclusive” dealership, trade-mark and licensing agreement between Scotti and Finger Lakes. The agreement stated that Scotti would provide training, management consulting, sales materials, and the products and equipment necessary to be a Scotti dealer. In return Finger Lakes was obligated to execute the equipment lease, and the agreement specifically provided that the lease would be financed through an independent lending institution.
The lease agreement, which is separate from the franchise agreement, contains a standard commercial assignment clause which provides for a waiver of defenses. The provision states that: "The obligations of the Lessee hereunder shall not be subject, as against any such transferee or assignee, to any defense, setoff or counterclaim available to Lessee against Lessor and that the same may be asserted only against Lessor.”
Despite this clause, defendants have interposed a defense of fraud in the inducement by Scotti.
Their claim is based on the assertion that Scotti entered *50 into the contract for the express purpose of fleecing the defendants, assigning the paper to the bank, taking the money and not performing; indeed, that he never intended to perform. The defendants further assert that Scotti perpetrated the same fraud upon them as he had been doing for a period of approximately two years upon other dealers. As to Chase, the defendants claim that it should have known the nature of Scotti’s business prior to the assignment of the lease because it had taken assignment of the other leases prior to this one and, further, should have been put on notice that there was fraud or illegality of some kind by the fact that the contract, when assigned, was already two years old.
Chase does not dispute defendants’ allegations as to Scotti’s fraudulent conduct, nor does it dispute the fact that it financed other leases for Scotti prior to this one. Chase contends only that it is entitled to summary judgment as a matter of law by virtue of the waiver of defenses provision in the assignment clause.
The assignment clause falls squarely within subdivision (1) of section 9-206 of the Uniform Commercial Code, which provides in pertinent part that: "[A]n agreement by a buyer or lessee that he will not assert against an assignee any claim or defense which he may have against the seller or lessor is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument under the Article on Commercial Paper (Article 3).”
The court agrees with Chase’s contention that fraud in the inducement is not a defense "of a type which may be asserted against a holder in due course” under article 3 of the Uniform Commercial Code. Those defenses are set forth in subdivision (2) of section 3-305 of the Uniform Commercial Code, which provides, in pertinent part:
"To the extent that a holder is a holder in due course he takes the instrument free from * * *
"(2) all defenses of any party to the instrument with whom the holder has not dealt except * * *
"(b) such * * * illegality of the transaction, as renders the obligation of the party a nullity; and
"(c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable oppor *51 tunity to obtain knowledge of its character or its essential terms” (emphasis supplied).
To fall within section 3-305 (subd [2], par [b]) of the Uniform Commercial Code then, the contract must be void rather than voidable (see Official Comment 6, Uniform Commercial Code, § 3-305). The question, therefore, is whether fraudulent inducement renders an obligation void or voidable. "Using the term in its exact sense and limiting it to the parties themselves, a void contract is binding upon neither [party] and cannot be ratified. * * * A voidable contract, on the other hand, binds one party but not the other, who may ratify or rescind at pleasure. A voidable contract is valid and binding until it is avoided by the party entitled to avoid it.” (9 NY Jur, Contracts, § 7.)
The traditional remedies for fraud in the inducement of a contract are an action seeking affirmation of the contract and damages (Matter of Wrap-Vertiser Corp. [Plotnick], 3 NY2d 17; see, e.g., Matter of Rothko, 43 NY2d 305, 324) or rescission (Sabo v Delman, 3 NY2d 155). Fraud in the inducement is also a defense in an action to enforce the obligation brought by the perpetrator of the fraud (Millerton Agway Co-op. v Briarcliif Farms, 17 NY2d 57). It is clear, therefore, that fraud in the inducement renders a contract voidable, but not void (see, generally, Bankers Trust Co. v Litton Systems, 599 F2d 488, 491-493). Accordingly, section 3-305 (subd [2], par [b]) of the Uniform Commercial Code would not be available to the defendants.
The misrepresentation defense provided by section 3-305 (subd [2], par [c]) of the Uniform Commercial Code is more fully explained in Official Comment 7 to section 3-305:
"Paragraph (c) of subsection (2) is new. It follows the great majority of the decisions under the original Act in recognizing the defense of 'real’ or 'essential’ fraud, sometimes called fraud in the essence or fraud in the factum, as effective against a holder in due course. The common illustration is that of the maker who is tricked into signing a note in the belief that it is merely a receipt or some other document. The theory of the defense is that his signature on the instrument is ineffective because he did not intend to sign such an instrument at all. Under this provision the defense extends to an instrument signed with knowledge that it is a negotiable instrument, but without knowledge of its essential terms.
*52 "The test of the defense here stated is that of excusable ignorance of the contents of the writing signed. * * *
"Unless the misrepresentation meets this test, the defense is cut off by a holder in due course.”
The overwhelming weight of recent authority stands for the proposition that fraud in the inducement is not an available defense under section 3-305 (subd [2], par [c]) of the Uniform Commercial Code (42 NY Jur, Negotiable Instruments, § 490, and cases cited therein; Marine Midland Trust Co. of Rochester v Blackburn, 50 Misc 2d 954; 2 Anderson, Uniform Commercial Code [2d ed], § 3-305:31, and cases cited therein; Fraud in the Inducement and Fraud in the Factum as Defenses Under UCC, § 3-305 Against Holder in Due Course, Ann. 78 ALR3d 1020, §§ 3, 4; see B.V.D. Co. v Marine Midland Bank-N. Y., 60 AD2d 544). Here, the defendants specifically admit that they do not claim that they did not understand the dealership agreement, and further state that they intend to prove at trial that Scotti induced them to enter into the agreements by fraudulent means. Thus, they make no claim of fraud in the factum, but rely exclusively on fraud in the inducement. Accordingly, they cannot avail themselves of the defense of section 3-305 (subd [2], par [c]).
The real question in this case is whether Chase is entitled to assert section 3-305 to protect itself from the defendants’ claim. In this regard, it must first establish that it took the assignment for value, in good faith and without notice of any claim or defense (Uniform Commercial Code, § 9-206, subd [1]).
Once a defense has been raised, the burden of proof shifts to the party claiming the rights of a holder in due course to establish that he or the party under whom he claims is in all respects a holder in due course (Uniform Commercial Code, § 3-307, subd [3]). Official Comment 3 to section 3-307 explains the import of subdivision (3) of section 3-307: "When it is shown that a defense exists the plaintiff may, if he so elects, seek to cut off the defense by establishing that he is himself a holder in due course * * * On this issue he has the full burden of proof by a preponderance of the total evidence. 'In all respects’ means that he must sustain this burden by affirmative proof that the instrument was taken for value, that it was taken in good faith, and that it was taken without notice (Section 3-302).” "Good faith” is defined, for Uniform Commercial Code purposes, as "honesty in fact in the conduct or transaction concerned” (Uniform Commercial Code, § 1-201, *53 subd [19]; see New York Bankers v Duncan, 257 NY 160, 165-166).
In National Bank of North Amer. v DeLuxe Poster Co. (51 AD2d 582), the plaintiff, an assignee of a computer lease agreement, moved for summary judgment in an action to recover the balance due. The lease agreement contained a clause, similar to the one here, which prohibited the lessor from asserting personal defenses as to the assignor against an assignee of the agreement. Nonetheless, the lessor interposed, as a defense, a concurrent agreement which limited the effectiveness of the lease agreement.
In its affidavit in support of the motion, the plaintiff, through an officer, stated as follows: "The complaint alleges and I hereby aver that plaintiff is an assignee for value * * * and that plaintiff purchased this lease in good faith and without notice of any claim or defense.” Nonetheless, the Appellate Division denied summary judgment, stating: "While the assignee of a lease who can qualify for the special protection afforded by subdivision (1) of section 9-206 is not, strictly speaking, a holder in due course, the purpose of that section is best served by giving such an assignee the protection, in full, accorded to a holder in due course. Accordingly, should plaintiff establish that it is entitled to the preferred status accorded certain assignees under subdivision (1) of section 9-206, it cannot be affected by any limitation of its rights arising out of a separate written agreement between its assignor and DeLuxe. However, an issue of fact is presented as to whether plaintiff did, in fact, take its assignment in good faith and without knowledge of any claim or defense. The affidavits submitted by plaintiff are insufficient to sustain its burden of proof (see Uniform Commercial Code, § 3-307 and Official Comment thereto [citation omitted]; see, also, Karpas v Bandler, 218 App Div 418; Budget Charge Accounts v Petrowski, 155 NYS2d 681).” (National Bank of North Amer. v DeLuxe Poster Co., supra, p 583.)
Chase has not, in either its moving papers or its complaint, alleged that it took the assignment in good faith and without notice of any claims or defenses, nor has it submitted any proof on this motion that would compel the court to reach that conclusion. Thus, it has not even made the showing made by the plaintiff in National Bank. Moreover, Chase does not deny the claim of fraud in the inducement of the original contract.
*54 A comparison of subdivision (1) of section 9-206 and sections 3-302 and 3-305 of the Uniform Commercial Code shows that the statutes are in pari materia insofar as they require good faith, value, and the absence of notice, as a predicate to invocation of their protections. Accordingly, it would seem that in determining controversies under subdivision (1) of section 9-206 one must apply the burden of pleading and proof applied to parties involved in cases under article 3; this is, in effect, what was done in National Bank (see, also, Bankers Trust Co. v Litton Systems, 599 F2d 488, supra).
Accordingly, the court finds that the defendants have raised a sufficient question of fact as to whether Chase took the assignment in good faith and without notice, an issue which Chase has failed to overcome on this motion. It may not, therefore, at this juncture, assert the protection of section 3-305 and remains vulnerable to the defendants’ claim of fraud in the inducement.
A further issue is presented as to whether the defendants’ allegations are sufficient to establish an issue of fact as to notice which would entitle defendants to an order denying summary judgment on that ground alone.
In B.V.D. Co. v Marine Midland Bank-N. Y. (46 AD2d 51), an action to recover the balance due on equipment lease contracts in which the equivalent of waiver of defenses clauses were held to exist, the assignee bank moved to dismiss 10 affirmative defenses, including a claim of fraudulent inducement, and further moved for summary judgment. The defendant’s answer had alleged, inter alla, that the bank knew or should have known of the fraud and the supporting papers on the motion set forth circumstantial facts from which the bank’s knowledge could be inferred.
In upholding Special Term’s denial of the motion for summary judgment, the First Department stated: "While the pleading of this knowledge by the bank is inept, sufficient is shown to defeat summary judgment. As what the bank knew is peculiarly a fact within its own competence, a showing of facts which might lead to that conclusion is sufficient to raise an issue at this time.” (46 AD2d, supra, at p 54.)
However, leave was granted to renew the motion after further discovery. Thereafter (60 AD2d 544, supra) the same court reversed Special Term and granted summary judgment, holding that after further discovery no triable issue or fact was found: "Implicit in our earlier decision was also the ruling *55 that fraud of the original lessor in the inducement would not be a defense to Marine Midland Bank’s action unless it were shown that Marine Midland Bank had knowledge or notice of such fraud.” (60 AD2d, supra, at p 544.)
The result in the first B.V.D. case would be equally appropriate here. While the defendants do not allege actual knowledge, they have alleged circumstantial facts from which such knowledge might be inferred. Whether the defendants will be able to prove that Chase had notice of Scotti’s fraudulent conduct and, therefore, is not entitled to the protection of subdivision (1) of section 9-206 of the Uniform Commercial Code is a question which cannot be resolved at this time.
For the foregoing reasons, plaintiff’s motion for summary judgment is denied.