136 N.J. Super. 97 (1975)
344 A.2d 350
WINSLOW, COHU & STETSON, INC., PLAINTIFF,
v.
SIDNEY DANIEL SKOWRONEK, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided August 8, 1975.
*99 Mr. L. Phillips Hoyt for plaintiff (Messrs. Hoyt, Jeffers & Weiland, attorneys).
*100 Mr. William W. Lanigan for defendant.
GAYNOR, J.C.C., Temporarily Assigned.
Plaintiff seeks to recover the value of securities which were erroneously and inadvertently registered in defendant's name and delivered by plaintiff to defendant. The complaint sounds in unjust enrighment, conversion and wrongful possession. Defendant does not deny the receipt of the higher-valued securities but contends that there was no conversion or wrongful possession, that plaintiff's claim is barred by the statute of limitations or laches, and further, that plaintiff's loss is the result of its own mistake and negligence which precludes recovery.
There is no dispute as to the factual pattern giving rise to the present litigation. The uncontroverted facts disclose that in 1967 defendant maintained a brokerage account with plaintiff and in November of that year requested plaintiff to purchase 100 shares of the common stock of Engelhard Minerals and Chemical Corporation. The purchase was made at a price of 41-7/8 a share, or a total of $4,187.50, which was paid by defendant. In pursuance of this purchase for defendant, plaintiff sent a 100-share certificate to the transfer agent with instructions to register the certificate in the name of defendant. Through plaintiff's inadvertence the certificate forwarded to the transfer agent was a 100-share certificate of the higher-valued Engelhard Minerals and Chemicals Corporation $4.25 cumulative convertible preferred stock. This certificate was registered in defendant's name, and on December 4, 1967 plaintiff delivered it to defendant. In September 1972, as the result of an independent audit, the error was discovered by plaintiff, and defendant was thereupon requested to return the certificate for the 100 shares of preferred stock or its money equivalent. However, defendant had sold the stock in February 1972 and refused to accede to plaintiff's demand for the return of the stock or its money value. Defendant had sold the stock at a price of $141 a share, thereby realizing the gross amount of $14,100. The dividends paid on the preferred stock while in the possession *101 of defendant totaled $1,806.25. Defendant was notified of the error by a telephone message on or about September 12, 1972 and a confirming letter mailed on September 20, 1972. The market value of the 100 shares of common stock on those dates was $6,077 and the cash dividends paid from December 1967 to that date on the common stock amounted to $390.95. All of the factual evidence was submitted by plaintiff, no testimony being offered by defendant.
Plaintiff contends that, under these facts, there was a conversion by defendant of the preferred stock and, as the injured party, it is entitled to recovery of the stock certificate, if defendant still has it, or money damages for the wrongful conversion. If the latter remedy is applicable, plaintiff asserts that the damages recoverable is the highest intermediate value of the securities between the date of delivery of the certificate to defendant, being the alleged date of conversion, and the date of judgment, plus the dividends received by defendant during this period. Plaintiff acknowledges that defendant would be entitled to a setoff for the value of the common stock and accumulated dividends thereon. Alternatively, plaintiff contends that it is entitled to recover under the concept that defendant has been unjustly enriched as a result of the mistake committed by plaintiff, thereby giving rise to a constructive trust in favor of plaintiff as to the money realized from the sale of the securities.
Defendant contends that he was not guilty of converting the subject securities inasmuch as he obtained them lawfully and had divested himself of their possession prior to the demand made by plaintiff. Further, that plaintiff was not the owner of the securities nor did it have such other interest in the property as to support a claim of conversion. Defendant also asserts that plaintiff's action is one for breach of contract and therefore barred by the four-year limitation set forth in N.J.S.A. 12A:2-725. Additionally, defendant claims that the defenses of waiver, estoppel and laches are applicable and preclude any recovery by plaintiff.
*102 We have not been directed to, nor has our research disclosed, any New Jersey decision involving circumstances similar to the present case. This may be due to a scarcity of such inadvertent mistakes on the part of brokerage houses, or the accepted realization on the part of their customers that they are not entitled to a windfall because of such inadvertencies. However, the question has been presented in cases arising in other jurisdictions. In National Security Corp. v. Hochman, 313 S.W.2d 776 (Mo. Ct. App. 1958), a subrogated surety sought to recover the amount paid to a stockbroker because of the delivery to a customer of a wrong certificate of stock. The customer had placed an order for the purchase of 300 shares of 1¢ par value stock of Federal Uranium Corporation which was executed by the broker. By a clerical error the broker caused to be issued and delivered to the customer 300 shares of 25¢ par value stock of the company. The broker made demand for the return of the mistakenly issued stock, which was refused even though still in the possession of the customer. In affirming a judgment for plaintiff, the court held that the refusal of the customer to return the securities after being notified of the error constituted a conversion. It was also suggested that the brokers would have a right in equity to recover possession of the stock.
Similarly, in Firemen's Fund Ins. Co. v. Trippe, 402 S.W. 2d 577 (Mo. Ct. App. 1966), the court upheld a verdict in favor of a broker who had inadvertently transferred and delivered to defendant a security of higher value than that ordered. In that case defendant customer placed an order for the purchase of 500 shares of American Investors Corporation at a price of $1.50 a share. The order was consummated and in the process of causing a certificate to be transferred to defendant a clerk mistakenly forwarded a certificate for 500 shares of American Investment Corporation, a higher priced stock. Upon discovering the error the broker demanded the return of the stock. Although the stock had been sold by defendant prior to such demand, the court found that the evidence *103 supported the inference that defendant knew that he had received the wrong stock prior to its sale. The act of disposing of the stock with the knowledge that it was not that which was originally ordered was deemed to be such an unauthorized act of dominion over the stock as to constitute a conversion thereof.
In the earlier case of Newburger v. Weaver, 300 Pa. 163, 150 A. 298 (Sup. Ct. 1930), the equitable right of a broker to recover stock mistakenly delivered to a customer was upheld. The customer had ordered the broker to purchase 100 shares of the "new" stock of Cities Service Company and paid the purchase price to the broker. The purchase was made as directed; however, through a mistake 100 shares of the higher priced "old" stock of the company was delivered to the customer. Upon discovering the mistake the broker demanded the return of the stock which was refused. The court affirmed an order directing the customer to return the stock received by him and the delivery of the correct stock by the broker, with a proper adjustment of dividends.
See also, 12 Am. Jur.2d, Brokers, § 133 at 876; and Somerville Nat'l Bank v. Hornblower, 293 Mass. 363, 199 N.E. 918 (Sup. Jud. Ct. 1936). In the above-cited cases the refusal of the recipient to return the securities which were mistakenly delivered after notification of the mistake and demand for the return, or the exercise of ownership rights after knowledge of the mistaken transfer, were considered as the factors giving rise to a conversion.
These essential elements are not present in the instant case. The proofs do not disclose knowledge of the error by defendant prior to the notice in September 1972, at which time the securities were no longer in his possession, nor does the evidence support an inference of prior knowledge on the part of defendant. The demand then made for the return of the securities was thus ineffectual and the action of defendant could not be considered as a refusal to comply with the demand. Under the circumstances of this case, a timely demand *104 and a failure to thereupon return the securities would be necessary requirements to support a claim of conversion. See Mueller v. Technical Devices Corp., 8 N.J. 201 (1951). These elements not being present, there was no conversion.
However, it is our opinion that the concepts of undue enrichment and restitution are applicable to the factual situation presented by this case. It is a general rule that a payment of money under a mistake of fact may be recovered, provided that such recovery will not prejudice the payee. This rule is grounded upon considerations of equity and fair dealing. It is considered unjust enrichment to permit a recipient to retain money paid because of a mistake, unless the circumstances are such that it would be inequitable to require its return. Great American Ins. Co. v. Yellen, 58 N.J. Super. 240 (App. Div. 1959); 66 Am. Jur.2d, Restitution and Implied Contracts, § 119 at 1055. This is so notwithstanding that the mistake is unilateral and a consequence of the payor's negligence, or that the payee acted in good faith. Great American Ins. Co. v. Yellen, supra. While these principles have been applied to cases between stockbrokers and their customers involving payment of the proceeds of a mistaken sale of securities (see 48 A.L.R.3d 513), we discern no reason why they are not equally applicable to a delivery of stock certificates which were mistakenly purchased or mistakenly transferred. A person who receives a voluntary benefit is liable to make restitution if the circumstances of its receipt or retention are such that, as between the two persons, it would be unjust for the recipient to retain the benefit. Brick Tp. v. Vannell, 55 N.J. Super. 583 (App. Div. 1959); Hirsch v. Travelers Ins. Co., 134 N.J. Super. 466 (App. Div. 1975); Restatement, Restitution, § 1 (1937).
Defendant raises the defenses of laches, waiver and estoppel. The basis of these defenses is the long period of time elapsing between the delivery of the securities and the demand for corrective action, together with the fact that the situation was created by plaintiff's own inadvertence and *105 negligence. Further, that the exercise of reasonable diligence and control by plaintiff in transacting its business should have disclosed the error within a short time after it occurred. Although the error in the transfer and delivery to defendant of the wrong security was not discovered for almost five years, the audit which revealed the mistake had been commenced a year or two prior to the discovery and defendant was notified of the error promptly upon its discovery. The laches claimed by defendant basically relates to the long lapse of time before the error was discovered by plaintiff. Assuming that plaintiff should have known of the error shortly after its occurrence through the exercise of reasonable care and diligence in running its business, there is no evidence that its failure to do so was prejudicial to defendant. The lapse of time, in and of itself, will not give rise to laches unless the failure to assert one's rights within a reasonable period of time results in prejudice to the defending party. Kohler v. Barnes, 123 N.J. Super. 69 (App. Div. 1973); 30A C.J.S. Equity § 116. In any event, plaintiff acted promptly after it discovered the mistaken transfer and delivery. Additionally, the evidence does not support the defenses of waiver and estoppel. No proof was offered to show any voluntary and intentional relinquishment by plaintiff of its claim, nor of any conduct which should estop it from asserting its claim against defendant.
Inasmuch as we consider that the disposition of this case is governed by the equitable principles of unjust enrichment and restitution, we need not be concerned with the issue of the statute of limitations. However, if applicable, we do not consider that the limitation set forth in N.J.S.A. 12A:2-725 is controlling.
In view of our conclusion that there was no conversion of the mistakenly delivered securities, the measure of damages enunciated in Kaplan v. Cavicchia, 107 N.J. Super. 201 (App. Div. 1969), is not applicable. Rather, the benefit received by defendant resulting from the erroneous transfer *106 and delivery of the securities is the appropriate extent of a recovery by plaintiff. According to our findings, defendant benefitted in the amount of $8,023, being the added amount received from the sale of the preferred stock over that which would have been received from a sale of the common stock, and in the amount of $1,715.30, being the difference between the dividends received and those payable on the common stock.
Judgment will therefore be entered in favor of plaintiff in the sum of $9,738.30, with interest from the date of the judgment to be entered and without costs.