### In the Matter of Raymond and Helen McATEER.

**Bankruptcy No. 89–02296.**

United States Bankruptcy Court, D. New Jersey.

Aug. 16, 1991.

Gregory R. McCloskey, Begley & McCloskey, Moorestown, N.J., for First Fidelity Bank, N.A.

Eric J. Clayman, Jenkins & Jenkins, Haddon Heights, N.J., for debtor, Helen McAteer.

Robert M. Wood, Wood, Broege & Fischer, Manasquan, N.J., Standing Trustee.

## OPINION

WILLIAM H. GINDIN, Chief Judge.

### I. Introduction

Presently before the court is the motion of Helen McAteer ("Mrs. McAteer"), a debtor herein, to declare excess insurance proceeds property of the estate and the cross motion of First Fidelity Bank ("FFB") for reconsideration of its claim. For the reasons set forth below, this court has determined that the excess insurance policy proceeds are property of the estate and are recoverable under 11 U.S.C. §§ 522(h) and 549(a)(1). Furthermore, FFB's cross motion for reconsideration of its claim will be denied.

### II. Facts

On March 28, 1989 Helen and Raymond McAteer filed a joint chapter 13 petition. FFB was listed as a secured creditor in the petition on the basis of a purchase money loan made for a 1989 Mitsubishi pickup truck. Accordingly, on May 3, 1989, FFB filed a proof of claim. The debtors' plan proposed to "cram down" FFB by paying the value of the vehicle, $7,525.00, plus 10% of the unsecured balance. The court confirmed the debtors' plan on June 6, 1989 without objection from FFB. On February 5, 1990, Raymond McAteer died.

Mr. McAteer had purchased credit life insurance in connection with the loan transaction for his purchase of the subject motor vehicle. Upon proof of his death, the Federal Home Life Insurance Company ("Federal Home") paid FFB $11,356.32, the full amount due on the debtors' loan on the date of death. Because the amount due on the contract and paid by Federal Home exceeded the amount due FFB under the debtors' confirmed plan, the surviving debtor, Mrs. McAteer, now moves to compel the bank to turn over to the trustee all funds it received in excess of $7,525.00, plus 10% of the unsecured balance, in addition to any interest on the cram down amount. FFB, however, asserts that since the death occurred after the plan was confirmed, the proceeds are properly payable to FFB, the owner of the policy proceeds.[1] FFB has cross moved for reconsideration of its claim and alleges that changed circumstances necessitate its reexamination.

### III. Discussion

In general, a determination of what property constitutes property of the estate is controlled by 11 U.S.C. § 541 which provides:

(a) The commencement of a case under ... this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held ...

(1) ... all legal or equitable interests of the debtor in property as of the commencement of the case.

(5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

(C) as a beneficiary of a life insurance policy or of a death benefit plan.

Counsel for FFB argues that the proceeds of the policy are not property of the estate because the policy proceeds were owned by FFB and not by the debtor. *In re Woodson*, 839 F.2d 610 (9th Cir.1988), *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391 (5th Cir.1987). The two cases upon which counsel relies, however, are factually inapposite. *Louisiana World Exposition* involved a liability policy and a pending, unadjudicated tort claim. The Fifth Circuit specifically stated that the debtor had no interest in the insurance proceeds which were to be paid to its officers and directors, the only named insureds. *Id.* at 1399. The debtor's rights were limited to the indemnification pro-

---

1. This court has not been presented with, and thus will not consider, the issue of whether the insurance company was actually liable to FFB for the excess proceeds above the amount due under the debtors' confirmed plan.

ceeds. *Id.* *Woodson* dealt with a claim by the estate to proceeds of a policy where the debtor's spouse died three days after his filing. The Fourth Circuit disapproved a compromise with respect to the debtor's exemption thereby holding that the proceeds were property of the estate. Thus, *Woodson* supports the debtor's position.

■ FFB additionally contends that since more than 180 days had elapsed between the date of the filing of the petition and the date of death, the proceeds are not property of the estate pursuant to 11 U.S.C. § 541(a)(5)(C). In the instant case, although Mrs. McAteer's interest in the insurance policy may not have vested in time to satisfy the requirements of § 541(a)(5)(C), she undoubtedly did have a contingent interest in the policy at the time of the commencement of the case. The Court of Appeals for the Third Circuit has stated "that an insurance policy is property of the estate within 11 U.S.C. § 541(a)(1) 'even though the policy has not matured, has no cash surrender value and is otherwise contingent.'" *Estate of Lellock v. Prudential Ins. Co.*, 811 F.2d 186, 189 (3d Cir.1987) (quoting *In re McCulloch & Sons, Inc.*, 30 B.R. 7, 8 (Bankr.D.Or.1983)).

Additionally, and more significantly, the instant matter arises under chapter 13 of the Code. Section 1306 broadens the general guidelines for property of the estate contained in § 541 and provides that:

> (a) Property of the estate includes, in addition to the property specified in section 541 of this title—
>
>> (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title ...

Furthermore, as recognized by the United States Supreme Court in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205, 103 S.Ct. 2309, 2313–14, 76 L.Ed.2d 515 (1983), property of the estate "is broad [and is] intended to include in the case any property made available to the estate by other provisions of the Bankruptcy Code."

■ Based upon his reading of *Woodson, supra.*, counsel for FFB stresses that a distinction must be drawn between ownership of a policy and an individual's classification as a beneficiary. Counsel contends that *Woodson* leads to the conclusion that property of the estate will only include "any proceeds to which the debtor *as beneficiary* would be entitled." (Brief of FFB in opposition at 14. Emphasis in original).

None of the arguments advanced by FFB, however, persuade this court to recharacterize the contingent, beneficial interest of Mrs. McAteer in her husband's testamentary estate, which is identified in the subject policy of insurance as the "secondary beneficiary", as anything other than a contingent, equitable interest. This court agrees with counsel for FFB, that the debtor is a beneficiary after the entire debt of FFB is paid. (Brief of FFB in opposition at 14). In fact, the policy provides that "[w]here the benefit payable is more than the debt, the excess [will be] payable to you, if living, otherwise to the beneficiary, if living, otherwise to your estate." Consequently, this court concludes that the excess proceeds are property of the estate because Mrs. McAteer had an express, contingent, beneficial interest in them at the time of the filing.

■ Counsel properly points out that indebtedness on a credit life insurance policy is defined in N.J.S.A. 17B:29–2(e) as "[t]he total amount payable by a debtor to a creditor in connection with a loan or other credit transaction." The crucial concept which counsel for FFB has failed to acknowledge, however, is that the amount of the indebtedness owed to FFB in the context of this bankruptcy case is not the amount due on the contract. The value of FFB's claim, as determined by 11 U.S.C. § 506(a), is the value of the motor vehicle on the date of the filing of the petition plus any dividend which may be available on the unsecured portion. The value of FFB's claim does not change merely because it is being paid with insurance proceeds. *First Fidelity Bank, N.A., South Jersey v. Behr*, No. 90–2860 at 7, 1991 WL 195767 (D.N.J. March 28, 1991).

This case is almost identical to Judge Rodriguez's unpublished opinion in *Behr*,

*supra.*[2] In that case, chapter 13 debtors held credit life insurance on a vehicle financed by FFB. The plan provided that FFB would be paid the cram down value of the financed vehicle. Subsequent to confirmation of the plan the debtor passed away. The court granted the surviving debtor's motion to have excess insurance proceeds turned over to the estate. The court held that the insurance policy and the proceeds were property of the estate under 11 U.S.C. §§ 541 and 1306(a)(1) and that FFB was bound by the terms of the confirmed plan under 11 U.S.C. § 1327. Judge Rodriguez concluded that the plan was an alteration which limited the interest of FFB. This court agrees with Judge Rodriguez's determination and, although unpublished, finds his reasoning persuasive in the matter at bar.

Finally, this court, as a court of equity, has also considered the fairness of its ruling. Should FFB be permitted to keep the excess insurance proceeds, it would receive substantially more than it was to have received pursuant to the confirmed chapter 13 plan. FFB would receive a windfall caused by the untimely death of Mr. McAteer, the very individual who had paid the insurance premiums. A party that receives such a benefit "is liable to make restitution if the circumstances of its receipt or retention are such that, as between the two persons, it would be unjust for the recipient to retain the benefit." *Winslow, Cohu & Stetson, Inc. v. Skowronek,* 136 N.J.Super. 97, 104, 344 A.2d 350 (Law Div.1975). Accordingly, this court finds that the excess proceeds should be turned over to the trustee pursuant to 11 U.S.C. §§ 522(h) and 549(a)(1).

Lastly, FFB has moved this court to reconsider its claim according to 11 U.S.C. § 502(j). Counsel argues that the interests of the bank in the proceeds of the policy had not matured until after the confirmation of the plan, at the time of Mr. McAteer's death. Counsel properly points out that the bankruptcy court has the power to reconsider claims for cause pursuant to 11 U.S.C. § 502(j) and Fed.R.Bankr.P. 3008. *In re Int'l Yacht and Tennis, Inc.,* 922 F.2d 659 (11th Cir.1991), *In re Walsh Trucking Co.,* 838 F.2d 698 (3d Cir.1988). This court, however, views FFB's request for reconsideration as an attempt to avoid the cram down. Because there would have been no dispute regarding either the value of FFB's claim or its treatment under the comfirmed plan absent the existence of the policy proceeds, there exists no a sound basis for reconsideration.

As discussed herein above, the value of FFB's claim is established and fixed by § 506(a). The amount of a claim is not impacted by the nature of the proceeds used to pay that claim, rather it is dependant solely upon the value of the collateral at the time of the filing. *See Behr,* at 7. Regardless of whether the debtor's obligation to FFB were to be characterized as the amount due on a loan or indebtedness under the subject insurance policy, the debtor's obligation became fixed at $7,525.00, plus 10% of the unsecured balance upon the filing of the petition. The indebtedness due under the insurance policy is the debt owed by the debtor at the time the policy was triggered. Thus, no matter how the debtor's obligation is characterized, the policy proceeds owed to FFB are the same as the cram down amount because the policy was triggered post-petition and is limited by § 506(a). Consequently, and pursuant to 11 U.S.C. § 1327, FFB is bound by the order of confirmation to the amount of its claim as provided in the confirmed plan.

## IV. Conclusion

For the reasons set forth above in the opinion of this court, the excess proceeds are determined to be property of the debtors' estate and recoverable under 11 U.S.C. §§ 522(h) and 549(a)(1). The cross motion of FFB for reconsideration of its claim is denied.

---

**2.** In fact, it would appear from the language quoted in the *Behr* case, that the policy was identical to the policy in the within case. It should be noted, as well, that the bank was the same institution.

Counsel for the debtor shall submit an order with ten (10) days.